| | | |
|---|---|---|
| **Brady Byrum, Plaintiff** | § | **United States District Court** |
| and any and all others | § | |
| of like circumstances | § | |
| v | § | **Eastern District of Texas** |
| | § | **Sherman Division** |
| | § | |
| <u>City of Plano</u>, immunity waived | § | **4-11 CV 00060** |
| <u>James Forsythe</u>, private capacity | § | |
| <u>State of Texas</u>, immunity waived | § | |
| all conspiring Defendants | § | **Judge** _____ |

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

**MAR - 4** 2011

DAVID J. MALAND, CLERK
BY
DEPUTY _____

## FIRST AMENDED CIVIL COMPLAINT FOR DAMAGES

### PARTIES

Comes now Brady Byrum, Plaintiff, (hereinafter also known as Byrum) in the above styled and numbered cause of action against the City of Plano, Defendant, (hereinafter also known as Plano), and against James Forsythe (hereinafter also known as Forsythe), in his private capacity, and against the State of Texas for an injunction only.

1.  Plaintiff Byrum can be reached at the home mailing address of 2802 Cary Drive, Mesquite, Texas 75150, telephone number 972-682-4729 and cell phone number of 682-559-0159.  Both **Defendants, Plano and Forsythe** can be reached at 1520 Avenue K, Plano, Texas 75074, telephone number 972-941-7000.  **Defendant State of Texas** can be reached at Office of the Attorney General,  P.O. Box 12458, Austin, Texas 78711-2548 and/or 300 W. 15th Street, Austin, Texas 78701, phone 512-463-2100.

2.  Byrum presently has no Attorney for this action, and requests that the rules be relaxed to allow for this just cause to be heard, especially in matters of page-count and format, which would be discriminatory when held against Pro-Se'ers and not against Attorneys.

## VENUE

3.  Because Plano has its situs in Collin County, and Forsythe is alleged to have worked for/at Plano at the time and place of the torts and rights deprivations committed by him against Byrum, the United States District Court, Eastern District of Texas, Sherman Division, is proper venue for this suit.  Defendant Plano is a political subdivision of the State of Texas and Defendant Forsythe is a Texas Licensed Agent.

## JURISDICTION

4.  The jurisdiction of this Court is invoked under the provisions of §§1331, 1332 and 1343(a)(1-4) of Title 28, U.S.C., and §§1983, 1985 and 1986 of Title 42, U.S.C., and the supplemental jurisdiction of this Court, under §1367 of Title 28, U.S.C., with respect to the causes of action under state law sounding in tort.

5.  Because Byrum alleges Federal Deprivation of Rights protected by the 1st, 5th, 13th and 14th Amendments, and because Byrum alleges torts caused by Forsythe and Plano, that fit within the confines of the legislated language of 42 USC 1983, 1984, 1985 and 1986, and in violation of the **Religious Freedom Act, Federal Public Law, 103-141**, this court has Jurisdiction to hear and adjudicate this case.

6. Further, the amount demanded is $75,001.00 to invoke the jurisdiction of the Court under 28 USC 1332, against Defendant Plano and Defendant Forsythe.

## JURY TRIAL REQUESTED

7. Byrum hereby requests a Jury Trial and for the Jurors to decide on all issues capable of being heard and decided by a Jury. Plaintiff respectfully demands his right to trial by jury on all issues, in furtherance of his rights under the *Seventh* and *Fourteenth Amendments as it applies to the State of Texas,* and pursuant to F.R.C.P. 38.

## CONTROLLING CONSTITUTION LAW

8. The **First Amendment** to the U.S. Constitution provides that: "Congress [or state legislatures] shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech [or to choose not to speak and the right to privacy and to be left alone], or of the press; or the right of the people peacefully to assemble [which includes the right to travel], and to petition the Government for a redress of grievances."

9. The **Fifth Amendment** to the U.S. Constitution provides that: "No person...shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, [the right to travel] or property [vehicles, money] without due process of law; nor shall private property be taken for public use, without just compensation."

10. The **Thirteenth Amendment** to the U.S. Constitution provides that: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted shall exist within the United States, or any place subject to their jurisdiction."

11. The **Fourteenth Amendment** to the U.S. Constitution provides that: "...No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## CONTROLLING CASELAW

12. "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda v. Arizona, 384 U.S. 436, 491.

## DEFENDANT FORSYTHE'S CAPACITY

13. Defendant Forsythe is being accused by Byrum of working with an invalid Oath of Office from the inception that he began working for the City of Plano, violating the Texas Constitution Article 16 Section 1, for working without a Certificate of Appointment in violation of the Texas Government Code, Section 601.007 and 008, and thus, **he is not being sued in his OFFICIAL CAPACITY because he actually has none, and so he has to be sued in his PRIVATE CAPACITY.** Byrum received a

copy of Forsythe's invalid Oath shortly after Forsythe committed the torts against Byrum, through a Public Information Act Request. Byrum also requested and received a copy of every other Oath of Office of the Plano Police, and at best, only 21 of 328 were valid, proving a serious policy of neglect.

14. The Plano "Police Officer" James Forsythe clearly did NOT sign his Oath of Office. He is **one of 95** that did not sign their Oath. The document has the name of "James Christopher Forsythe" typed in all capital letters, twice on the document, and <u>contains the stamped name and signature</u> of **Toni L. Baggett** as the Notary Public, who **allegedly** administered the oath, BUT the document clearly states "SWORN AND SUBSCRIBED before me" on it. "SUB" means "under" and "SCRIBED" means "signed", therefore SUBSCRIBED means "under-signed" or "signed under" and **NO WHERE** within its "four corners" IS THERE **ANY** SIGNATURE OF James Christopher Forsythe on the document. Plaintiff finds it utterly amazing that Forsythe has operated as a Plano Police Officer at that time for over SEVENTEEN YEARS with nobody else prior to Plaintiff Byrum ever catching this gross negligent error.

## DEFENDANT PLANO'S CAPACITY

15. Defendant Plano has first of all failed and neglected to create the Plano Police Department by Ordinance, so that there would be an official agency to occupy. Secondly, Plano has failed and neglected to ensure that all of their Police Officers have a

valid Oath of Office on file.  Shortly after Forsythe committed his torts against Byrum, Byrum filed a Public Information Act Request for copies of all of the Plano Police Oaths, and when they were received, they were all thoroughly examined by Byrum and found to be unlawfully deficient.

16.  The United States Supreme Court case of <u>Norton v Shelby</u>, 118 U.S. 425, 441, 6 S. Ct. 1121 (1866), contains the holdings of that HIGHEST COURT in the Land to expound on the basic overriding principal that; **If an agency was not properly created by law, then the acts of the agent are void**.

17.  Since the time of this Norton v Shelby ruling, this particular clause language directly above, (granting De Facto status to an officer if the agency lawfully exists, even if there is some defect in the particular officer's appointment), has been modified by the two more recent U.S. Supreme Court rulings of <u>Ryder v U.S</u>. 515 U.S. 177, (1995), and <u>Waskey v Hammer</u> 223 U.S. 85 (1912), both of which further strengthen the caselaw holding in favor of Defendant (by reversing formerly held rulings conferring De Facto status), and is further reflected by the Texas Supreme Court's ruling in the case of Prieto Bail Bonds, (supra).]

18.  Norton further states, "As said by Mr. Justice MANNING, of the supreme court of Michigan, in <u>Carleton v. People</u>, 10 Mich. 259: **'Where there is no office there can be no officer de facto, for the reason that there can be none de jure."**

19. Norton further states "An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised - First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defacto being unknown to the public; fourth, under color of an election or an appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such."

20. Plano is a political subdivision of the State of Texas, and Defendant Forsythe brought four criminal actions against Plaintiff Byrum in the NAME and NATURE of a STATE OF TEXAS v BYRUM capacity. As such, Defendant Plano is nothing more than a smaller voice of the State of Texas, and is acting FOR the State, by attempting to collect funds from Byrum, some of which would be tendered to the State of Texas.

## DEFENDANT STATE OF TEXAS' CAPACITY

21. Per the Texas Civil Practice and Remedies Code, Sections 110.008 and 110.006, the immunity that would normally be allowed has been waived by the State of Texas Legislature, when the issues involve RELIGIOUS DISCRIMINATION, RELIGIOUS OPPRESSION and DEPRIVATION OF RELIGIOUS RIGHTS, and thus, the capacity of the Defendant State of Texas is one where the State has already WAIVED IMMUNITY.

## CONTROLLING FEDERAL U.S.C. LAW

## RELIGIOUS FREEDOM RESTORATION ACT

22. Plaintiff Byrum herein states that controlling Federal United States Code over this case is:

§ 2000bb. Congressional findings and declaration of purposes
(a) **Findings**
The Congress finds that—
(1) the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution;
(2) laws "neutral" toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise;
(3) governments should not substantially burden religious exercise without compelling justification;
(4) in Employment Division v. Smith, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and
(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.
(b) **Purposes**
The purposes of this chapter are—
(1) to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

(2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

## 2000bb–1. Free exercise of religion protected
### (a) In general
Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
### (b) Exception
Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.
### (c) Judicial relief
A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

## 2000bb–2. Definitions
As used in this chapter—
(1) the term "government" includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity;
(2) the term "covered entity" means the District of Columbia, the Commonwealth of Puerto Rico, and each territory and possession of the United States;
(3) the term "demonstrates" means meets the burdens of going forward with the evidence and of persuasion; and
(4) the term "exercise of religion" means religious exercise, as defined in section 2000cc–5 of this title.

## 2000bb–3. Applicability

### (a) In general
This chapter applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993.
### (b) Rule of construction
Federal statutory law adopted after November 16, 1993, is subject to this chapter unless such law explicitly excludes such application by reference to this chapter.
### (c) Religious belief unaffected
Nothing in this chapter shall be construed to authorize any government to burden any religious belief.

## § 2000bb–4. Establishment clause unaffected

Nothing in this chapter shall be construed to affect, interpret, or in any way address that portion of the First Amendment prohibiting laws respecting the establishment of religion (referred to in this section as the "Establishment Clause"). Granting government funding, benefits, or exemptions, to the extent permissible under the Establishment Clause, shall not constitute a violation of this chapter. As used in this section, the term "granting", used with respect to government funding, benefits, or exemptions, does not include the denial of government funding, benefits, or exemptions.

## CONTROLLING STATE OF TEXAS LAW

23.  Byrum declares that controlling State of Texas law in this case is:

## CIVIL PRACTICE AND REMEDIES CODE
**CIVIL PRACTICE AND REMEDIES CODE**
**TITLE 5. GOVERNMENTAL LIABILITY**
**CHAPTER 106. DISCRIMINATION BECAUSE OF RACE, RELIGION,** COLOR, SEX, **OR NATIONAL ORIGIN**
Sec. 106.001. PROHIBITED ACTS. (a) An officer or employee of the state or of a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin:
(1)  refuse to issue to the person a license, permit, or certificate;
(2)  revoke or suspend the person's license, permit, or certificate;
(3)  refuse to permit the person to use facilities open to the public and owned, operated, or managed by or on behalf of the state or a political subdivision of the state;
(4)  refuse to permit the person to participate in a program owned, operated, or managed by or on behalf of the state or a political subdivision of the state;
(5)  refuse to grant a benefit to the person;
(6)  impose an unreasonable burden on the person;  or
(7)  refuse to award a contract to the person.
(b)  This section does not apply to a public school official who is acting under a plan reasonably designed to end discriminatory school practices.
(c)  This section does not prohibit the adoption of a program designed to increase the participation of businesses owned and controlled by women, minorities, or disadvantaged persons in public contract awards.
*Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 1058, Sec. 1, eff. Aug. 31, 1987; Acts 1991, 72nd Leg., ch. 597, Sec. 56, eff. Sept. 1, 1991; Acts 1991, 72nd Leg., ch. 665, Sec. 1, eff. June 16, 1991; Acts 1999, 76th Leg., ch. 1499, Sec. 1.02, eff. Sept. 1, 1999.*

**Sec. 106.002. REMEDIES.** (a) If a person has violated or there are reasonable grounds to believe a person is about to violate Section 106.001, the person aggrieved by the violation or threatened violation may sue for preventive relief, including a permanent or temporary injunction, a restraining order, or any other order.

(b) In an action under this section, unless the state is the prevailing party, the court may award the prevailing party reasonable attorney's fees as a part of the costs. The state's liability for costs is the same as that of a private person.

*Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.*

**Sec. 106.003. PENALTIES.** (a) A person commits an offense if the person knowingly violates Section 106.001.

(b) An offense under this section is a misdemeanor punishable by:

(1) a fine of not more than $1,000;

(2) confinement in the county jail for not more than one year; or

(3) both the fine and confinement.

*Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.*

**CIVIL PRACTICE AND REMEDIES CODE**
**TITLE 5. GOVERNMENTAL LIABILITY**
**CHAPTER 108. LIMITATION OF LIABILITY FOR PUBLIC SERVANTS**
Sec. 108.001. DEFINITIONS. In this chapter:

(1) "Public servant" means a person who is:

(A) a public official elected or appointed to serve a governmental unit and acting in that capacity when the act or omission on which the damages were based occurred; or

(B) covered by Section 104.001 or Section 102.001.

(2) "Public servant" does not include an independent contractor, an agent or employee of an independent contractor, or another person who performs a contract for a unit of government.

(3) "Public servant" includes a licensed physician who provides emergency or post-emergency stabilization services to patients in a hospital owned or operated by a unit of local government.

*Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.12, eff. Sept. 2, 1987. Renumbered from Civil Practice & Remedies Code Sec. 107.001 by Acts 1989, 71st Leg., ch. 2, Sec. 16.01(3), eff. Aug. 28, 1989. Amended by Acts 1995, 74th Leg., ch. 139, Sec. 4, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch. 204, Sec. 11.06, eff. Sept. 1, 2003.*

**Sec. 108.002. LIMITATION OF LIABILITY.** (a) Except in an action arising under the constitution or laws of the United States, a public servant is not personally liable for damages **in excess of $100,000 arising from** personal injury, death, or **deprivation of a right**, privilege, or immunity if:

(1) the damages are the result of an act or omission by the public servant in the course and scope of the public servant's office, employment, or contractual performance for or

service on behalf of a state agency, institution, department, or local government; and

(2) for the amount not in excess of $100,000, the public servant is covered:

(A) by the state's obligation to indemnify under Chapter 104;

(B) by a local government's authorization to indemnify under Chapter 102;

(C) by liability or errors and omissions insurance; or

(D) by liability or errors and omissions coverage under an interlocal agreement.

(b) Except in an action arising under the constitution or laws of the United States, a public servant is not liable for damages in excess of $100,000 for property damage if:

(1) the damages are the result of an act or omission by the public servant in the course and scope of the public servant's office, employment, or contractual performance for or service on behalf of a state agency, institution, department, or local government; and

(2) for the amount not in excess of $100,000, the public servant is covered:

(A) by the state's obligation to indemnify under Chapter 104;

(B) by a local government's authorization to indemnify under Chapter 102;

(C) by liability or errors and omissions insurance; or

(D) by liability or errors and omissions coverage under an interlocal agreement.

(c) Repealed by Acts 2003, 78th Leg., ch. 204, Sec. 11.07; Acts 2003, 78th Leg., ch. 289, Sec. 5.

*Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.12, eff. Sept. 2, 1987. Renumbered from Civil Practice & Remedies Code Sec. 107.002 by Acts 1989, 71st Leg., ch. 2, Sec. 16.01(3), eff. Aug. 28, 1989. Amended by Acts 1995, 74th Leg., ch. 139, Sec. 4, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch. 204, Sec. 11.01, 11.07, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 289, Sec. 1, 5, eff. Sept. 1, 2003.*

**Sec. 108.003. STATE LIABILITY NOT AFFECTED.** (a) This chapter does not affect the liability for indemnification of the state under Chapter 104 or of a local government under Chapter 102.

(b) This chapter does not impose liability or waive immunity for a public servant who has common law, statutory, or other immunity.

*Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.12, eff. Sept. 2, 1987. Renumbered from Civil Practice & Remedies Code Sec. 107.003 by Acts 1989, 71st Leg., ch. 2, Sec. 16.01(3), eff. Aug. 28, 1989. Amended by Acts 1995, 74th Leg., ch. 139, Sec. 4, eff. Sept. 1, 1995.*

**TITLE 5. GOVERNMENTAL LIABILITY**
**CHAPTER 110. RELIGIOUS FREEDOM**
**Sec. 110.001. DEFINITIONS.** (a) In this chapter:

(1) "Free exercise of religion" means an act or refusal to act that is substantially motivated by sincere religious belief. In determining whether an act or refusal to act is substantially motivated by sincere religious belief under this chapter, it is not necessary to determine that the act or refusal to act is motivated by a central part or central requirement of the person's sincere religious belief.

(2) "Government agency" means:

(A) this state or a municipality or other political subdivision of this state; and

(B) any agency of this state or a municipality or other political subdivision of this state, including a department, bureau, board, commission, office, agency, council, or public institution of higher education.

(b) In determining whether an interest is a compelling governmental interest under Section 110.003, a court shall give weight to the interpretation of compelling interest in federal case law relating to the free exercise of religion clause of the First Amendment of the United States Constitution.

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

**Sec. 110.002. APPLICATION.** (a) This chapter applies to any ordinance, rule, order, decision, practice, or other exercise of governmental authority.

(b) This chapter applies to an act of a government agency, in the exercise of governmental authority, granting or refusing to grant a government benefit to an individual.

(c) This chapter applies to each law of this state unless the law is expressly made exempt from the application of this chapter by reference to this chapter.

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

**Sec. 110.003. RELIGIOUS FREEDOM PROTECTED.** (a) Subject to Subsection (b), a government agency may not substantially burden a person's free exercise of religion.

(b) Subsection (a) does not apply if the government agency demonstrates that the application of the burden to the person:

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that interest.

(c) A government agency that makes the demonstration required by Subsection (b) is not required to separately prove that the remedy and penalty provisions of the law, ordinance, rule, order, decision, practice, or other exercise of governmental authority that imposes the substantial burden are the least restrictive means to ensure compliance or to punish the failure to comply.

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

**Sec. 110.004. DEFENSE.** <u>A person whose free exercise of religion has been substantially burdened in violation of Section 110.003 may assert that violation as a defense in a judicial or administrative proceeding without regard to whether the proceeding is brought in the name of the state or by any other person.</u>

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

**Sec. 110.005. REMEDIES.** (a) Any person, other than a government agency, who successfully asserts a claim or defense under this chapter is entitled to recover:

(1) **declaratory relief** under Chapter 37;

(2) **injunctive relief to prevent the threatened violation or continued violatio**n;

(3) **compensatory damages for pecuniary and nonpecuniary losses**; and

(4) **reasonable attorney's fees, court costs, and other reasonable expenses incurred in bringing the action**.

(b) Compensatory damages awarded under Subsection (a)(3) **may not exceed $10,000** for each entire, distinct controversy, without regard to the number of members or other persons within a religious group who claim injury as a result of the government agency's exercise of governmental authority. A claimant is not entitled to recover exemplary damages under this chapter.

(c) An action under this section must be brought in district court.

(d) A person may not bring an action for damages or declaratory or injunctive relief against an individual, o**ther than an action brought against an individual acting in the individual's official capacity as an officer of a government agency.**

(e) This chapter does not affect the application of Section 498.0045 or 501.008, Government Code, or Chapter 14 of this code.

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

## Sec. 110.006. NOTICE; RIGHT TO ACCOMMODATE.

(a) A person may not bring an action to assert a claim under this chapter unless, 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested:

(1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's governmental authority;

(2) of the particular act or refusal to act that is burdened; and

(3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.

(b) Notwithstanding Subsection (a), **a claimant may, within the 60-day period established by Subsection (a), bring an action for declaratory or injunctive relief and associated attorney's fees, court costs, and other reasonable expenses, if:**

**(1) the exercise of governmental authority that threatens to substantially burden the person's free exercise of religion is imminent; and**

**(2) the person was not informed and did not otherwise have knowledge of the exercise of the governmental authority in time to reasonably provide the notice.**

(c) A government agency that receives a notice under Subsection (a) may remedy the substantial burden on the person's free exercise of religion.

(d) A remedy implemented by a government agency under this section:

(1) may be designed to reasonably remove the substantial burden on the person's free exercise of religion;

(2) need not be implemented in a manner that results in an exercise of governmental authority that is the least restrictive means of furthering the governmental interest, notwithstanding any other provision of this chapter; and

(3) must be narrowly tailored to remove the particular burden for which the remedy is implemented.

(e) A person with respect to whom a substantial burden on the person's free exercise of religion has been cured by a remedy implemented under this section may not bring an action under Section 110.005.

(f) A person who complies with an inmate grievance system as required under Section 501.008, Government Code, is not required to provide a separate written notice under Subsection (a). In conjunction with the inmate grievance system, the government agency may remedy a substantial burden on the person's free exercise of religion in the manner described by, and subject to, Subsections (c), (d), and (e).

(g) In dealing with a claim that a person's free exercise of religion has been substantially burdened in violation of this chapter, an inmate grievance system, including an inmate grievance system required under Section 501.008, Government Code, must provide to the person making the claim a statement of the government agency's rationale for imposing the burden, if any exists, in connection with any adverse determination made in connection with the claim.

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

**Sec. 110.008. SOVEREIGN IMMUNITY WAIVED.** (a) **Subject to Section 110.006, sovereign immunity to suit and from liability is waived and abolished to the extent of liability created by Section 110.005, and a claimant may sue a government agency for damages allowed by that section.**

(b) Notwithstanding Subsection (a), this chapter does not waive or abolish sovereign immunity to suit and from liability under the Eleventh Amendment to the United States Constitution.

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

**Sec. 110.009. EFFECT ON RIGHTS.** (a) This chapter does not authorize a government agency to burden a person's free exercise of religion.

(b) The protection of religious freedom afforded by this chapter is in addition to the protections provided under federal law and the constitutions of this state and the United States. This chapter may not be construed to affect or interpret Section 4, 5, 6, or 7, Article I, Texas Constitution.

*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

**Sec. 110.011. CIVIL RIGHTS.** (a) Except as provided in Subsection (b), this chapter does not establish or eliminate a defense to a civil action or criminal prosecution under a federal or state civil rights law.

(b) This chapter is fully applicable to claims regarding the employment, education, or volunteering of those who perform duties, such as spreading or teaching faith, performing devotional services, or internal governance, for a religious organization. For the purposes of this subsection, an organization is a religious organization if:

(1) the organization's primary purpose and function are religious, it is a religious school organized primarily for religious and educational purposes, or it is a religious charity organized primarily for religious and charitable purposes; and
(2) it does not engage in activities that would disqualify it from tax exempt status under Section 501(c)(3), Internal Revenue Code of 1986, as it existed on August 30, 1999.
*Added by Acts 1999, 76th Leg., ch. 399, Sec. 1, eff. Aug. 30, 1999.*

## CAUSE OF ACTION NUMBER ONE

24. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 23 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Conspiracy,** Forsythe has conspired with others unknown to Plaintiff to unlawfully extort funds from Defendant and other people outside the strict, limited, delegated powers that we entrusted to him and to all other Plano public servants, when he and the others gave us their OATH OF OFFICE, that we received and accepted as their contractual promises to not violate ANY of the people's rights at ANY time in ANY manner, while in OUR Offices.

## CAUSE OF ACTION NUMBER TWO

25. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 24 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Breach of Contract,** Forsythe has breached his OATH OF OFFICE by unlawfully committing false arrest and by filing false charges against Defendant in violation

of many laws, and which one charge was dropped prior to trial and was found not guilty on the other.

## CAUSE OF ACTION NUMBER THREE

26. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 25 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Breach of Fiduciary Duty**, Forsythe and all other public servants are in fact Fiduciaries in OUR Offices, and Forsythe has unlawfully breached that duty by committing false arrest and filing false charges, without OUR delegated permission, collecting extortion and using the funds for his and for other co-conspirators' pay.

## CAUSE OF ACTION NUMBER FOUR

27. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 26 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Common Law Fraud**, Forsythe has unlawfully committed fraud against Defendant, in his attempt to extort money from Defendant, by using the Court system powers available to him, that then collects fines, that then goes into the general funds of the City of Plano, that then goes into his and the other participants paychecks and raises, bonuses and other benefits.

## CAUSE OF ACTION NUMBER FIVE

28. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 27 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Intentional Infliction of Emotional Distress**, Forsythe has unlawfully caused the intentional infliction of emotional distress by committing false arrest and filing false charges, causing Byrum to fear reprisals from the City of Plano, Collin County and the State of Texas, for having brought false charges into public records.

## CAUSE OF ACTION NUMBER SIX

29. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 28 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Defamation**, Forsythe has unlawfully invaded Byrum's interest in his reputation and good name.

## CAUSE OF ACTION NUMBER SEVEN

30. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 29 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Libel and Slander**, Forsythe has unlawfully published Byrum's name in false charges, and this has further threatened to compel other agencies like Collin County and the State of Texas to attempt to penalize Byrum.

## CAUSE OF ACTION NUMBER EIGHT

31. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 30 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Negligence**, Forsythe has been negligent in his public servant duties, unlawfully acting outside the confines of a republican form of government, by committing false arrest and filing false charges against Byrum.

## CAUSE OF ACTION NUMBER NINE

32. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 31 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Negligent Misrepresentation**, by Forsythe having an indirect but inseparable pecuniary interest in the false charges, by the potential funds collected in the form of fines, going into the general funds of the City, from which Forsythe is paid, and unlawfully misrepresented his actions as being lawful when they are not.

## CAUSE OF ACTION NUMBER TEN

33. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 32 inclusive, with the same force and effect as though each were fully set forth at length herein.

**Common Law Breach of Warranty**, by having warranted Forsythe's actions and behaviors with an OATH and BOND, to be lawful at all times during his public service, when he has violated so many laws for making false arrest and filing false charges against Byrum.

## CAUSE OF ACTION NUMBER ELEVEN

34. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 33 inclusive, with the same force and effect as though each were fully set forth at length herein.

18 USC §1346, **Failure to put forth Honest Government Service**, by Plano having failed to properly hire, train, supervise, discipline, correct, and block Forsythe from committing torts and crimes against Byrum, Plano has aided, abetted and participated, even encouraged Forsythe in his fraudulent deeds against Byrum to allow him to be a funds-creating, revenue agent for the City.

## CAUSE OF ACTION NUMBER TWELVE

35. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 34 inclusive, with the same

force and effect as though each were fully set forth at length herein.

**DECEPTIVE TRADE PRACTICES,** By the City of Plano putting forth the City of Plano Police Department as a validly created and enacted department, when it was never enacted or created by Ordinance, and by putting forth that Forsythe was a valid, lawfully enacted Plano Police Officer when both the Department he alleged to work for did not and does not exist, and when Forsythe personally had no valid Oath of Office to begin working as said Police Officer to begin with, and for criminally prosecuting Plaintiff Byrum for not participating in the Social Security Scheme violating the Texas Business and Commerce Code 17.

## CAUSE OF ACTION NUMBER THIRTEEN

36. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 35 inclusive, with the same force and effect as though each were fully set forth at length herein.

Byrum accuses Defendant Forsythe by and through Defendant Plano, of committing the tort of Abuse of Office, as codified in the Texas Penal Code;

**PENAL CODE**
**TITLE 8. OFFENSES AGAINST PUBLIC ADMINISTRATION**
**CHAPTER 39. ABUSE OF OFFICE**
Sec. 39.01. DEFINITIONS. In this chapter:
(1) "Law relating to a public servant's office or employment" means a law that specifically applies to a person acting in the capacity of a public servant and that directly or indirectly:
(A) imposes a duty on the public servant; or
(B) governs the conduct of the public servant.
(2) "Misuse" means to deal with property contrary to:

(A) an agreement under which the public servant holds the property;
(B) a contract of employment or oath of office of a public servant;
(C) a law, including provisions of the General Appropriations Act specifically relating to government property, that prescribes the manner of custody or disposition of the property; or
(D) a limited purpose for which the property is delivered or received.
*Added by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.*


## CAUSE OF ACTION NUMBER FOURTEEN

37.  Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 36 inclusive, with the same force and effect as though each were fully set forth at length herein.

Byrum herein accuses Defendant Forsythe, by and through Defendant Plano, of committing the tort of Abuse of Official Capacity, despite Defendant Forsythe not having any real and valid Official Capacity, due to his lack of signature on the Oath of Office in the public records.

**Sec. 39.02. ABUSE OF OFFICIAL CAPACITY.** (a)  A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly:
(1) violates a law relating to the public servant's office or employment; or
(2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.
(b)  An offense under Subsection (a)(1) is a Class A misdemeanor.
(c)  An offense under Subsection (a)(2) is:
(1) a Class C misdemeanor if the value of the use of the thing misused is less than $20;
(2) a Class B misdemeanor if the value of the use of the thing misused is $20 or more but less than $500;
(3) a Class A misdemeanor if the value of the use of the thing misused is $500 or more but less than $1,500;
(4) a state jail felony if the value of the use of the thing misused is $1,500 or more but less than $20,000;
(5) a felony of the third degree if the value of the use of the thing misused is $20,000 or

more but less than $100,000;

(6) a felony of the second degree if the value of the use of the thing misused is $100,000 or more but less than $200,000; or

(7) a felony of the first degree if the value of the use of the thing misused is $200,000 or more.

(d) A discount or award given for travel, such as frequent flyer miles, rental car or hotel discounts, or food coupons, are not things of value belonging to the government for purposes of this section due to the administrative difficulty and cost involved in recapturing the discount or award for a governmental entity.

(e) If separate transactions that violate Subsection (a)(2) are conducted pursuant to one scheme or continuing course of conduct, the conduct may be considered as one offense and the value of the use of the things misused in the transactions may be aggregated in determining the classification of the offense.

(f) The value of the use of a thing of value misused under Subsection (a)(2) may not exceed: (1) the fair market value of the thing at the time of the offense; or

(2) if the fair market value of the thing cannot be ascertained, the cost of replacing the thing within a reasonable time after the offense.

*Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974. Amended by Acts 1983, 68th Leg., p. 3241, ch. 558, Sec. 7, eff. Sept. 1, 1983. Renumbered from Penal Code Sec. 39.01 and amended by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.Amended by: Acts 2009, 81st Leg., R.S., Ch. 82, Sec. 1, eff. September 1, 2009.*

## CAUSE OF ACTION NUMBER FIFTEEN

38. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 37 inclusive, with the same force and effect as though each were fully set forth at length herein.

Byrum accuses Defendant Forsythe of committing the tort of Official Oppression because he used the gun, badge, uniform, squad car, emergency lights, vehicle markings, radio and computers issued by or owned by Defendant Plano, in the furtherance of the money collecting scheme without full, lawful authorization from the people, by not having a signature on the Oath of Office in the public records.

**Sec. 39.03. OFFICIAL OPPRESSION.** (a) A public servant acting under color of his office or employment commits an offense if he:

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; ...

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity..."

*Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974. Amended by Acts 1989, 71st Leg., ch. 1217, Sec. 1, eff. Sept. 1, 1989; Acts 1991, 72nd Leg., ch. 16, Sec. 19.01(34), eff. Aug. 26, 1991. Renumbered from Penal Code Sec. 39.02 by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.*

## CAUSE OF ACTION NUMBER SIXTEEN

39.  Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 38  inclusive, with the same force and effect as though each were fully set forth at length herein.

**RELIGIOUS PERSECUTION:** By Forsythe enforcing and by Plano having a POLICY and by the State of Texas having an established system in place, whereby humans who are alive for a certain number of days within the imaginary outer boundaries commonly known or believed to be the state of Texas, are presumed to be or are presumed to WANT to be residents, citizens, inhabitants or otherwise contractees by acquiescence to one or more non-disclosed contracts, agreements, trusts, or other obligations to CONTRACT WITH or be submitted to the requirements of the State to acquire, keep, maintain and disclose when requested or demanded, evidence of a REALTIONSHIP and its commensurate membership I.D. Card, (an S.S.N.), with a private trust commonly known as the

Social Security System, which is nothing more than a wealth redistribution club, AS A MANDATORY PARTICIPANT THEREIN, or else, have CRIMINAL SANCTIONS placed over the heads of those humans who exercise their political and spiritual/religious rights to NOT be a participant in said scheme, in violation of numerous constitutional protections, numerous Federal Laws, and numerous State of Texas laws.

## CAUSE OF ACTION NUMBER SEVENTEEN

40. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 39 inclusive, with the same force and effect as though each were fully set forth at length herein.

**RELIGIOUS DISCRIMINATION,** by allowing those who participate in the Social Security System, be allowed to pass on the five million plus miles of publicly owned and free highways and byways on the soil of America, and by NOT allowing those who do not participate by religious objection, by criminalizing said lawful and free travel, it constitutes religious discrimination.

## CAUSE OF ACTION NUMBER EIGHTEEN

41. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 40 inclusive, with the same force and effect as though each were fully set forth at length herein:

**DEPRIVATION OF FEDERALLY PROTECTED RIGHTS,** by Forsythe criminalizing the free exercise of travel as protected by the First and Fifth Amendments of the Constitution, and the numerous supporting State and Federal caselaws proving that traveling in America, on the roads, in common and modern means including but not limited to non-commercial automobiles, non-commercial pick-up trucks, and non-commercial motorcycles.

## CAUSE OF ACTION NUMBER NINETEEN

42. Byrum repeats and reiterate each and every allegation and statement contained in the paragraphs of this Complaint designated as 1 through 41 inclusive, with the same force and effect as though each were fully set forth at length herein.

**POLITICAL DISCRIMINATION:** because Byrum lives in America, where it has been and still is a God Given Right to exercise the rights of choice, to pick which political alignment he chooses, to vote or not to vote, to participate or not to participate in the political choices and even if not finding any of his liking, to form up his own political construct, and use his rights of freedom of speech, freedom of the press, freedom of the right to peaceably assemble, and freedom of the right to contact all levels and all branches of representative government with his grievances, BUT by Forsythe, Plano and the State of Texas to create and enforce a system of CRIMINALAZING a POLITICAL CHOICE to not participate in the Social Security System, when that participation had been

abandoned by and through religious and political objections of Byrum.


## PLAINTIFF PRAYS FOR AN ANTI-DOMBROWSKI INJUNCTION

43.   Byrum further pleads for an ANTI-DOMBROWSKI INJUNCTION, IN THE FORM / TITLE OF A "BYRUM INJUNCTION", to wit:

> **Justice Scalia has recently stated that there are now "ANTI-SCOPES cases"**
> **coming to court, where instead of people being criminally and civilly**
> **prosecuted for TEACHING EVOLUTION as was done in the State of**
> **Tennessee v Scopes, people are now being criminally and civilly prosecuted**
> **for TEACHING INTELLIGENT DESIGN**, on the exact oppositional end of
> that issue's pendulum,


44.   In regards to the pendulum of whether it was or now is a crime for being a socialist in America, IT NO LONGER IS, and it has now swung to the very end, oppositional to its former swing limit, where Mr. Dombrowski had successfully gained his injunction.


45.   Dombrowski v. Pfister 380 U.S. 479 (1965) was a landmark Supreme Court case brought forth by Dr. James Dombrowski along with William Kunstler, founder of the Center for Constitutional Rights, against the governor of Louisiana, law enforcement officers, and the chairperson of the state's Legislative Joint Committee on Un-American Activities for prosecuting or threatening to secute his organization under several state subversion statutes.

46. Mr. Dombrowski pled for and received a PERMANENT FEDERAL injunction from prosecution, because the State of Louisiana had criminally prosecuted him for his **socialist beliefs**, under the then existent UN-AMERICAN ACTIVITIES LAWS, for his participation in socialist speech, socialist press, socialist assembly and socialist redress, within the outer boundaries of the State of Louisiana, ALL OF WHICH were actions completely protected by the FIRST AMENDMENT, due to the State of Louisiana being a part of the United States of America, as Texas is.

47. Now that the United States of America has swung to the socialist end, there will never be another valid petition for a Dombrowski Injunction, (evidenced by the fact that no one has received a Dombrowski injunction since that date, despite several petitions), because *almost* everyone in this great nation is now, in one degree or another, a proud socialist, even if not outright knowingly, with the most common evidence and proof thereof being a Social Security Card in almost everyone's wallet or purse.

48. This issue pendulum in question that Plaintiff Byrum is bringing before this Court is whether or not he and other people of like religious and political persuasion are going to be allowed to be free on the roads of America without having evidence of their "club membership" in the nation's largest wealth-redistribution club, the Social Security System.

49. In this exact manner, Byrum now pleads for and moves this Court for an ANTI-DOMBROWSKI, "BYRUM INJUNCTION", because it is now clear that he will continually and forever be criminally prosecuted for not having a Social Security Number.

50. Having a paper card with ink in the shape of a series of numbers on it has absolutely no bearing on whether the holder is qualified to steer and operate the machinery in a safe manner on the public-owned roads. That is the Federal Question that must be answered.

51. While most will retort in shock and wonder HOW one could sever the SSN tie, it is common knowledge to ANYONE who studies law for a decent length of time that one may lawfully and fully sever ANY TIE that is founded in any one or more or all of the following conditions, to wit: INFANCY, MISREPRESENTATION, LACK OF FULL DISCLOSURE, FRAUD, DURESS, THREATS or COERCION, all of which Byrum claims has occurred against him in various degrees in this S.S. System and further, that CONGRESS AUTHORED the means to sever the tie and hid it in plain sight, by serving a form of Public Declaration of Independence from the SSA and a Public Declaration of Dependence on God, mailed to two (so-called) Federal Agencies, according to the United States Code 26 USC 1402g.

52. Further, the Social Security System is unlawful in Texas for the following reasons. First of all, participation in the Social Security System violates the D.T.P.A. for it being

a perpetual PONZI Scheme, where the funds being confiscated and collected from the workers pay, in the beginning years of the late 1930's, were from 30 participants and doled out to only 1 applicant. Decades later, the ratio was still 20 to 1, then 10 to 1, then 5 to 1, and just a few years ago 3 to 1, and is approximately 1 to 1, where we are now at the beginning of the AGE-WAVE of baby boomers retiring, and the weight of the ratio of workers who are paying in to the applicants for benefits will now switch to a 1 to 2 ratio, then 1 to 3, then 1 to 5, and will continue accelerating, where the "fund" will not only have to quickly do several things to keep the Ponzi scheme rolling, namely: (1) increase the age of retirement, (2) add means testing, (3) pay out less, (4) deny more applicants, (5) and lastly (6) increase the taxes on those paying in, but these six items will not keep the system afloat and will only delay the inevitable a few years at most.

**Sec. 17.46. DECEPTIVE TRADE PRACTICES UNLAWFUL.** (a) **False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.**
**(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:**
(1) passing off goods or services as those of another;
**(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;**
**(3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;**
**(4) using deceptive representations or designations of geographic origin in connection with goods or services;**
**(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;**
(6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;
(7) representing that goods or services are of a particular standard, quality, or grade, or

that goods are of a particular style or model, if they are of another;

(8) disparaging the goods, services, or business of another by false or misleading representation of facts;

**(9) advertising goods or services with intent not to sell them as advertised;**

**(10) advertising goods or services with intent not to supply a reasonable expectable public demand, unless the advertisements disclosed a limitation of quantity;**

(11) making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

**(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;**

(13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

**(14) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;**

(15) basing a charge for the repair of any item in whole or in part on a guaranty or warranty instead of on the value of the actual repairs made or work to be performed on the item without stating separately the charges for the work and the charge for the warranty or guaranty, if any;

(16) disconnecting, turning back, or resetting the odometer of any motor vehicle so as to reduce the number of miles indicated on the odometer gauge;

(17) advertising of any sale by fraudulently representing that a person is going out of business;

(18) advertising, selling, or distributing a card which purports to be a prescription drug identification card issued under Section 4151.152, Insurance Code, in accordance with rules adopted by the commissioner of insurance, which offers a discount on the purchase of health care goods or services from a third party provider, and which is not evidence of insurance coverage, unless:

(A) the discount is authorized under an agreement between the seller of the card and the provider of those goods and services or the discount or card is offered to members of the seller;

(B) the seller does not represent that the card provides insurance coverage of any kind; and

(C) the discount is not false, misleading, or deceptive;

**(19) using or employing a chain referral sales plan in connection with the sale or offer to sell of goods, merchandise, or anything of value, which uses the sales technique, plan, arrangement, or agreement in which the buyer or prospective buyer is offered the opportunity to purchase merchandise or goods and in connection with the purchase receives the seller's promise or representation that the buyer shall have the right to receive compensation or consideration in any form for furnishing to the seller the names of other prospective buyers if receipt of the compensation or consideration is contingent upon the occurrence of an event subsequent to the time the buyer purchases the merchandise or goods;**

*[this is done by inducing parents to induct their own children into the system]*

(20) representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter shall be construed to expand the implied warranty of merchantability as defined in Sections 2.314 through 2.318 and Sections 2A.212 through 2A.216 to involve obligations in excess of those which are appropriate to the goods;

(21) promoting a pyramid promotional scheme, as defined by Section 17.461;

(22) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

(23) filing suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household, or agricultural use in any county other than in the county in which the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract; provided, however, that a violation of this subsection shall not occur where it is shown by the person filing such suit he neither knew or had reason to know that the county in which such suit was filed was neither the county in which the defendant resides at the commencement of the suit nor the county in which the defendant in fact signed the contract;

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

(25) using the term "corporation," "incorporated," or an abbreviation of either of those terms in the name of a business entity that is not incorporated under the laws of this state or another jurisdiction;

(26) selling, offering to sell, or illegally promoting an annuity contract under Chapter 22, Acts of the 57th Legislature, 3rd Called Session, 1962 (Article 6228a-5, Vernon's Texas Civil Statutes), with the intent that the annuity contract will be the subject of a salary reduction agreement, as defined by that Act, if the annuity contract is not an eligible qualified investment under that Act or is not registered with the Teacher Retirement System of Texas as required by Section 8A of that Act; or

(27) taking advantage of a disaster declared by the governor under Chapter 418, Government Code, by:

(A) selling or leasing fuel, food, medicine, or another necessity at an exorbitant or excessive price; or

(B) demanding an exorbitant or excessive price in connection with the sale or lease of fuel, food, medicine, or another necessity.

(c)(1) It is the intent of the legislature that in construing Subsection (a) of this section in suits brought under Section 17.47 of this subchapter the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade

Commission Act [15 U.S.C.A. Sec. 45(a)(1)].

(2) In construing this subchapter the court shall not be prohibited from considering relevant and pertinent decisions of courts in other jurisdictions.

(d) For the purposes of the relief authorized in Subdivision (1) of Subsection (a) of Section 17.50 of this subchapter, the term "false, misleading, or deceptive acts or practices" is limited to the acts enumerated in specific subdivisions of Subsection (b) of this section.

*Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973. Amended by Acts 1977, 65th Leg., p. 601, ch. 216, Sec. 2, 3, eff. May 23, 1977; Acts 1977, 65th Leg., p. 892, ch. 336, Sec. 1, eff. Aug. 29, 1977; Acts 1979, 66th Leg., p. 1327, ch. 603, Sec. 3, eff. Aug. 27, 1979; Acts 1987, 70th Leg., ch. 280, Sec. 1, eff. Sept. 1, 1987; Acts 1993, 73rd Leg., ch. 570, Sec. 6, eff. Sept. 1, 1993; Acts 1995, 74th Leg., ch. 414, Sec. 3, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 463, Sec. 1, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 962, Sec. 1, eff. Sept. 1, 2001; Acts 2001, 77th Leg., ch. 1229, Sec. 27, eff. June 1, 2002; Acts 2003, 78th Leg., ch. 1276, Sec. 4.001(a), eff. Sept. 1, 2003. Amended by: Acts 2005, 79th Leg., Ch. 728, Sec. 11.101, eff. September 1, 2005. Acts 2007, 80th Leg., R.S., Ch. 1230, Sec. 26, eff. September 1, 2007.*

## Sec. 17.461. PYRAMID PROMOTIONAL SCHEME. (a) In this section:

(1) "Compensation" means payment of money, a financial benefit, or another thing of value. The term does not include payment based on sale of a product to a person, including a participant, who purchases the product for actual use or consumption.

(2) "Consideration" means the payment of cash or the purchase of a product. The term does not include:

(A) a purchase of a product furnished at cost to be used in making a sale and not for resale;

(B) a purchase of a product subject to a repurchase agreement that complies with Subsection (b); or

(C) time and effort spent in pursuit of a sale or in a recruiting activity.

**(3) "Participate" means to contribute money into a pyramid promotional scheme without promoting, organizing, or operating the scheme.**

(4) "Product" means a good, a service, or intangible property of any kind.

**(5) "Promoting a pyramid promotional scheme" means:**

**(A) inducing or attempting to induce one or more other persons to participate in a pyramid promotional scheme; or**

**(B) assisting another person in inducing or attempting to induce one or more other persons to participate in a pyramid promotional scheme, including by providing references.**

**(6) "Pyramid promotional scheme" means a plan or operation by which a person gives consideration for the opportunity to receive compensation that is derived primarily from a person's introduction of other persons to participate in the plan or operation rather than from the sale of a product by a person introduced into the**

**plan or operation.**

(b) To qualify as a repurchase agreement for the purposes of Subsection (a)(2)(B), an agreement must be an enforceable agreement by the seller to repurchase, on written request of the purchaser and not later than the first anniversary of the purchaser's date of purchase, all unencumbered products that are in an unused, commercially resalable condition at a price not less than 90 percent of the amount actually paid by the purchaser for the products being returned, less any consideration received by the purchaser for purchase of the products being returned. A product that is no longer marketed by the seller is considered resalable if the product is otherwise in an unused, commercially resalable condition and is returned to the seller not later than the first anniversary of the purchaser's date of purchase, except that the product is not considered resalable if before the purchaser purchased the product it was clearly disclosed to the purchaser that the product was sold as a nonreturnable, discontinued, seasonal, or special promotion item.

## (c) A person commits an offense if the person contrives, prepares, establishes, operates, advertises, sells, or promotes a pyramid promotional scheme. An offense under this subsection is a state jail felony.

(d) It is not a defense to prosecution for an offense under this section that the pyramid promotional scheme involved both a franchise to sell a product and the authority to sell additional franchises if the emphasis of the scheme is on the sale of additional franchises.

*Added by Acts 1995, 74th Leg., ch. 463, Sec. 2, eff. Sept. 1, 1995.*

53. Further, Plaintiff Byrum knows it is unlawful to commit theft, and that it is unlawful to HIRE anyone to commit theft FOR HIM, and also it is unlawful to RECEIVE STOLEN PROPERTY, as is codified in the Texas Penal Code, to wit;

**PENAL CODE**
**TITLE 7. OFFENSES AGAINST PROPERTY**
**CHAPTER 31. THEFT**
**Sec. 31.01. DEFINITIONS.** In this chapter:

(1) "Deception" means:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

(C) preventing another from acquiring information likely to affect his judgment in the transaction;

(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

(2) "Deprive" means:

(A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

(B) to restore property only upon payment of reward or other compensation; or

(C) to dispose of property in a manner that makes recovery of the property by the owner unlikely.

(3) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:

(A) induced by deception or coercion;

(B) given by a person the actor knows is not legally authorized to act for the owner;

(C) given by a person who by reason of youth, mental disease or defect, or intoxication is known by the actor to be unable to make reasonable property dispositions;

(D) given solely to detect the commission of an offense; or

(E) given by a person who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property.

(4) "Appropriate" means:

(A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or

(B) to acquire or otherwise exercise control over property other than real property.

(5) "Property" means:

(A) real property;

(B) tangible or intangible personal property including anything severed from land; or

(C) a document, including money, that represents or embodies anything of value.

**(6) "Service" includes:**

**(A) labor and professional service;**

(B) telecommunication, public utility, or transportation service;

(C) lodging, restaurant service, and entertainment; and

(D) the supply of a motor vehicle or other property for use.

(7) "Steal" means to acquire property or service by theft....

*Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974. Amended by Acts 1975,*

*64th Leg., p. 914, ch. 342, Sec. 9, eff. Sept. 1, 1975; Acts 1985, 69th Leg., ch. 901, Sec. 2, eff. Sept. 1, 1985; Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994; Acts 1997, 75th Leg., ch. 165, Sec. 30.237, eff. Sept. 1, 1997; Acts 2003, 78th Leg., ch. 432, Sec. 1, eff. Sept. 1, 2003.*

**Sec. 31.02. CONSOLIDATION OF THEFT OFFENSES.**  Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property.
*Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974.  Amended by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.*

**Sec. 31.03. THEFT.**  (a)  A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
(b)  Appropriation of property is unlawful if:
(1)  it is without the owner's effective consent;
(2)  the property is stolen and the actor appropriates the property knowing it was stolen by another; or...
(c)  For purposes of Subsection (b):
(1)  evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty;
(2)  the testimony of an accomplice shall be corroborated by proof that tends to connect the actor to the crime, but the actor's knowledge or intent may be established by the uncorroborated testimony of the accomplice;
(3)  an actor engaged in the business of buying and selling used or secondhand personal property, or lending money on the security of personal property deposited with the actor, is presumed to know upon receipt by the actor of stolen property (other than a motor vehicle subject to Chapter 501, Transportation Code) that the property has been previously stolen from another if the actor pays for or loans against the property $25 or more (or consideration of equivalent value) and the actor knowingly or recklessly:
**(5)  stolen property does not lose its character as stolen** when recovered by any law enforcement agency;
(d)  It is not a defense to prosecution under this section that:
(1)  the offense occurred as a result of a deception or strategy on the part of a law enforcement agency, including the use of an undercover operative or peace officer;
(2)  the actor was provided by a law enforcement agency with a facility in which to commit the offense or an opportunity to engage in conduct constituting the offense;  or
(3)  the actor was solicited to commit the offense by a peace officer, and the solicitation

was of a type that would encourage a person predisposed to commit the offense to actually commit the offense, but would not encourage a person not predisposed to commit the offense to actually commit the offense.

(e) Except as provided by Subsection (f), an offense under this section is:...

**(4) a state jail felony if:**

**(A) the value of the property stolen is $1,500 or more but less than $20,000, ...**

**(5) a felony of the third degree if the value of the property stolen is $20,000 or more but less than $100,000,**

**(6) a felony of the second degree if the value of the property stolen is $100,000 or more but less than $200,000; or**

**(7) a felony of the first degree if the value of the property stolen is $200,000 or more.**

**(f) An offense described for purposes of punishment by Subsections (e)(1)-(6) is increased to the next higher category of offense if it is shown on the trial of the offense that:**

**(1) the actor was a public servant at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of his status as a public servant;**

**(2) the actor was in a contractual relationship with government at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of the contractual relationship;**

*Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974. Amended by Acts 1975, 64th Leg., p. 914, ch. 342, Sec. 10, eff. Sept. 1, 1975; Acts 1977, 65th Leg., p. 937, ch. 349, Sec. 1, eff. Aug. 29, 1977; Acts 1981, 67th Leg., p. 849, ch. 298, Sec. 1, eff. Sept. 1, 1981; Acts 1981, 67th Leg., p. 2065, ch. 455, Sec. 1, eff. June 11, 1981; Acts 1983, 68th Leg., p. 2918, ch. 497, Sec. 3, eff. Sept. 1, 1983; Acts 1983, 68th Leg., p. 3244, ch. 558, Sec. 11, eff. Sept. 1, 1983; Acts 1983, 68th Leg., p. 4523, ch. 741, Sec. 1, eff. Sept. 1, 1983; Acts 1985, 69th Leg., ch. 599, Sec. 1, eff. Sept. 1, 1985; Acts 1985, 69th Leg., ch. 901, Sec. 1, eff. Sept. 1, 1985; Acts 1987, 70th Leg., ch. 167, Sec. 5.01(a)(45), eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 245, Sec. 1, eff. Sept. 1, 1989; Acts 1989, 71st Leg., ch. 724, Sec. 2, 3, eff. Sept. 1, 1989; Acts 1991, 72nd Leg., ch. 14, Sec. 284(80), eff. Sept. 1, 1991; Acts 1991, 72nd Leg., ch. 565, Sec. 1, eff. Sept. 1, 1991; Acts 1993, 73rd Leg., ch. 203, Sec. 4, 5, eff. Sept. 1, 1993; Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994; Acts 1995, 74th Leg., ch. 318, Sec. 9, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 734, Sec. 1, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 843, Sec. 1, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 165, Sec. 30.238, 31.01(69), eff. Sept. 1, 1997; Acts 1997, 75th Leg., ch. 1153, Sec. 7.01, eff. Sept. 1, 1997; Acts 2001, 77th Leg., ch. 1276, Sec. 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 198, Sec. 2.136, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 257, Sec. 13, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 393, Sec. 20, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 432, Sec. 2, eff. Sept. 1, 2003.Amended by: Acts 2007, 80th Leg., R.S., Ch. 304, Sec. 1, eff. September 1, 2007. Acts 2009, 81st Leg., R.S., Ch. 70, Sec. 1, eff. September 1, 2009.Acts 2009, 81st Leg.,*

*R.S., Ch. 105, Sec. 1, eff. May 23, 2009.Acts 2009, 81st Leg., R.S., Ch. 139, Sec. 1, eff. September 1, 2009.Acts 2009, 81st Leg., R.S., Ch. 295, Sec. 1, eff. September 1, 2009.Acts 2009, 81st Leg., R.S., Ch. 903, Sec. 1, eff. September 1, 2009.Acts 2009, 81st Leg., R.S., Ch. 903, Sec. 2, eff. September 1, 2009.Acts 2009, 81st Leg., R.S., Ch. 933, Sec. 3J.01, eff. September 1, 2009.*

**Sec. 31.09. AGGREGATION OF AMOUNTS INVOLVED IN THEFT.** When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense.
*Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974. Amended by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.*

54. Since receiving stolen property is a crime in Texas, and since at least SOME of the funds taken from the millions of people's pay is stolen, and since amounts involved in theft can be aggregated and consolidated, Plaintiff Byrum knows that he cannot and will not apply to receive any of those stolen funds, and by waiving said application status in advance, he is EXEMPT from participating, according to the exemption statute at 26 USC 1402g, due to his religious objection to the socialist wealth redistribution scheme.

55. Plaintiff Byrum further knows and believes of his DUTY to sever the tie because of the mandatory effects of the principle of DISCOVERED PERIL, despite the inevitable fact that he will likely never see or receive one penny of the over $13,000.00 taken from him over the years during his participation and involvement, under what is now known and claimed to be Infancy, Misrepresentation, Lack of Full Disclosure, Fraud, Duress, Threats and Coercion. Further, Byrum knows he is to not commit theft because it is

against God's Word, and that he is to not be a surety for others, and that is what the SSN is for Congress, a surety, whereby one agrees to pay whatever debts Congress acquires.

## NEGATION OF IMMUNITIES

56. **Immunity Is Waived By The Illegal Acts Of The Agent.** When a state official or agency performs an illegal or unauthorized act, the official or agency is no longer acting for the State. Federal Sign v Texas S. Univ. 951 SW2d 401-401

57. The performance of an illegal or unauthorized act waives both immunity from suit and immunity from liability. Kubosh v City of Houston, 2 SW3d 463, 468-69.

58. A private litigant does not need legislative permission to sue State for a state official's violation of state law. Federal Sign. Id.

59. According to San Antonio v McKinney, 936 SW2d at 283 and Lake County Estates v Tahoe Reg'l Planning Agency, 440 U.S. 391, 400, neither Plano nor the State of Texas is PROTECTED from suit by the 11th Amendment of the United States Constitution.

## NOTICE OF WILLINGNESS TO MEDIATE ON MONEY DAMAGES

60. Byrum asserts the he is willing to attend affordable Mediation and to settle this case for less than the amount sued for, providing certain elements and conditions are met.

## THE STATE OF TEXAS WILL NOT BUDGE

61. The State of Texas refuses to issue Byrum a Texas Drivers License without Byrum first producing a Social Security Number to them. This "Mexican Standoff" of sorts, is one where the State criminalizes the lack of possession of their special, privilege laminated document, and yet refuses to issue said document unless one first waives their POLITICAL AND RELIGIOUS RIGHTS by joining and participating in a seemingly mandatory system, under the MIS-UNDERSTANDING or EISEGISIS of 42 USC 666 which allegedly requires the "states" to collect Social Security Numbers at the point of application for business licenses, recreational licenses or drivers licenses, to catch up with dead-beat parents who are behind on child support payments.

62. What 42 USC 666 does NOT require is for the State to DENY ISSUING a license when an applicant has either nullified their relationship through public declaration due to Infancy, Misrepresentation, Lack of Full Disclosure, Fraud, Duress, Threats or Coercion, or by Religious Objection, or when an applicant never had one in the first place, and does not desire to be an unwilling victim of the scheme. Yet the State of Texas READS INTO THE LAW something that does not exist, and IN PRACTICE, denies the applicant the license, and then holds CRIMINAL SANCTIONS over their heads for not participating in socialism. While the Legislative Intent was to make dead-beat parents pay, this does not apply to Plaintiff Byrum, because he has NEVER had any sexual relations with any woman other than his wife of 26 + years, and thus could not possibly

have any children that are being abandoned on the financial support system of the State. Byrum has fathered four children, two of whom are grown and moved out, with two minor daughters to go when they reach the age of majority.

## BYRUM WILL NOT BUDGE

63. When Defendant Forsythe conducted the arrest of Plaintiff, Byrum tendered a valid Progressive Proof of Insurance document, and a valid "RIGHT TO TRAVEL IDENTIFICATION" card Number LS 435756, issued by/under the authority of Defendant's Chief, Sitting Eagle, who is also known as Lawrence Henry, of the Pembina Nation, Little Shell Band, from which Defendant is a lineal descendant.

64. The Little Shell Band Tribe is one of about 245 non-recognized tribes, as compiled in research performed by **Professor Troy Johnson**, Cal State, Long Beach, California, entitled "U.S. Indian Tribes, federally non-recognized – Index by State".

65. While the Tribe does not have Federal Recognition by and through the B.I.A., (which usually relieves the recognized Nation of its full sovereignty, forcing the members thereof to accept "golden colored handcuffs" in a diminished privilege status), the "Red Lake and Pembina bands of Chippewa Indians" have a formal signed "Treaty" with the American Government, signed by Abraham Lincoln, and his Secretary of State, dated May 5, 1864. The written terms state that the duration "shall be perpetual."

## DEFENDANT FORSYTHE DID NOT CARE

66. Defendant Forsythe did not care that Byrum had a valid travel identification document issued by another government, which is allowed to be used and possessed, per the Texas Transportation Code 521.001 definition Number (a)(6)(B) and (a)(6)(C) and per the Texas Transportation Code, 521.030(b).

> 521.001 "License" means an authorization to operate a motor vehicle that is issued under or granted by the laws of this state. (a)(6)...**The term includes:**
> (A) a driver's license;
> **(B) the privilege of a person to operate a motor vehicle regardless of whether the person holds a driver's license; and**
> **(C) a nonresident's operating privilege.**
>
> 521.030(b) A nonresident who is 16 years of age or older and who has in the person's possession a driver's license **issued to the person by the person's state** or Canadian province of residence may operate a type of motor vehicle that is permitted to be operated with a Class C or Class M driver's license in this state **if the license held by the nonresident permits operation of that type of vehicle in the person's state or province of residence.**
> *Acts 1995, 74th Leg., ch. 165, Sec. 1, eff. Sept. 1, 1995.*

67. Yet Defendant Forsythe charged Plaintiff Byrum criminally, committing torts and rights deprivations, by stating that Byrum had NO DRIVERS LICENSE, which was a false entry into a government record, knowing his actions will be supported, ratified, and funds likely collected that will then **indirectly but absolutely** return to his own pocketbook in the form of salary paychecks and benefits.

## DEFENDANT PLANO DID NOT CARE

68. Defendant Plano is a fictitious, corporate entity, existing in the minds of those who

agree to its etherial existence, made up of humans who operate the public servant functions delegated to it by the people of Texas. Those individuals who are in and of the City of Plano that control those functions, were the people who have failed and neglected to train, supervise, educate, control, limit, stop, correct, punish, and even fire Defendant Forsythe when they knew or should have known that he has been operating without full, lawful authority for over 17 years. Defendant Plano did not care that crimes and torts were being committed by him however, because Defendant Forsythe has likely brought in hundreds of thousands of dollars in charges into the coffers of the City, over his now nineteen years of using the powers of the uniform and equipment in false accusations, and thus has committed DELIBERATE INDIFFERENCE to the deprivation of Plaintiff's rights.

## DEFENDANT STATE OF TEXAS DOES NOT CARE

69. It is the State of Texas that is committing the eisigesis by refusing to issue Plaintiff Byrum a laminated document without being a card-carrying socialist. In doing so, Defendant State of Texas has harmed Plaintiff, and will continue to harm Plaintiff until they are enjoined by this or some higher Court.

## BYRUM HAS BEEN DAMAGED

70. Byrum has been damaged and respectfully moves this court for remedy, redress, restitution, resolution, and restoration to his former undamaged status.

## SETOFF

71.  Plaintiff has pled for $75.001.00.  Defendant Plano desires to receive approximately $560.00 from Plaintiff Byrum as unpaid court fines and costs, from the **SHAM TRIAL**. Byrum has not yet gained an attorney to argue up this Federal case before court, so there are no attorney fees presently accumulating, but Byrum did pay $350.00 to open this case.

72.  Despite the fact that Forsythe was unlawfully invalid at the time of the arrest, and thus had no lawful authority to issue any citations, **Byrum is willing to agree to a setoff** of the totals, to wit;  $75,351.00 owed to Plaintiff Byrum, minus the $560.00 allegedly owed by Byrum to Defendant Plano,  which leaves $74,791.00 for Plaintiff Byrum.

## PRAYER FOR RELIEF

73.  Plaintiff prays for monetary damages, non-monetary damages for the emotional trauma and distress as the Jury assigns such according to law, injunctive and declaratory relief to compel the City of Plano to avoid making false contact with Byrum, filing false charges against Byrum, by fake officers with invalid documents, in a fake department that does not exist at law.

74.  WHEREFORE, Plaintiff Brady Lynn Byrum asks the Court to issue citation for Defendant to appear and answer, and that Plaintiff be awarded judgment against

Defendant for

(i). his actual damages,

(ii). exemplary damages,

(iii). pre- and post-judgment interest,

(iv). his costs of court,

(v). declaratory relief in the form notifying all Defendants that their actions have violated unrepealed law, unoverturned caselaw, and unamended Constitutional provisions,

(vi). injunctive relief, in the form of a written Court Order, ordering Defendant Plano and Defendant State of Texas to cease and desist from prosecuting Byrum for not having a Social Security Number, in perpetuity.

(vii). all other relief to which Plaintiff is entitled.

Respectfully Submitted by: _____

Brady Byrum, Plaintiff Pro-Se
2802 Cary Drive
Mesquite, Texas 75150
972-682-4729 home
682-559-0159 cell
email: bradybyrum@hotmail.com

## AFFIDAVIT

Plaintiff Byrum asserts and avers that: he is over the age of majority, he has no legal bar

to making an affidavit, and that the contents of this suit and affidavit are true and correct

and complete to the best of his knowledge, understanding and belief of the law, the

caselaw, the facts and the evidence, under the penalties of perjury, 28 USC 1746(1).

x _____

## CERTIFICATE OF SERVICE

Byrum certifies that he will faithfully serve Defendants with a true and complete copy of

the above numbered and entitled cause of action before the deadline time of service, by

Certified Mail, postage prepaid.

X _____

## FIAT

Byrum moves this Honorable Court to now compel the Clerk of Court to set a Hearing

Date at the earliest time available for the first pre-trial Hearing.

| | | |
|---|---|---|
| **Brady Byrum, Plaintiff** | § | **United States District Court** |
| **and any and all others** | § | |
| **of like circumstances** | § | |
| v | § | **Eastern District of Texas** |
| | § | **Sherman Division** |
| | § | |
| <u>City of Plano</u>, **immunity waived** | § | **4-11 CV 00060** |
| <u>James Forsythe</u>, **private capacity** | § | |
| <u>State of Texas</u>, **immunity waived** | § | |
| **all conspiring Defendants** | § | **Judge** _____ |

## ORDER

This Court, having heard the facts and testimony and examined the evidence in the above styled and numbered cause of action, does now fully grant relief to Byrum as requested.


X_____

Presiding Judge